IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

ASHLEY M. EISENBAND, individually
and on behalf of all others similarly situated,          **CLASS ACTION**

    Plaintiff,                                          **JURY TRIAL DEMANDED**

vs.

EVERALBUM, INC., a foreign corporation,

    Defendant.
_____/

**CLASS ACTION COMPLAINT**

Plaintiff, Ashley M. Eisenband, brings this class action against Defendant, Everalbum, Inc., and alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### NATURE OF THE ACTION

1.     This putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), stems from Defendant's conduct of deceiving users of its mobile application, Ever, into providing Defendant with the contact numbers on their mobile devices. Once in possession of users' contact numbers, Defendant, using an automatic telephone dialing system, transmits generic telemarketing text messages to the users' contacts from spoofed[1] telephone numbers. Defendant transmits its telemarketing texts without first obtaining the express consent of recipients.

---

[1] "Spoofing occurs when a caller deliberately falsifies the information transmitted to your caller ID display to disguise their identity." https://www.fcc.gov/consumers/guides/spoofing-and-caller-id; (last accessed on December 7, 2016).

2. Users of Defendant's mobile application, and recipients of Defendant's text messaging spam alike, have posted countless complaints on the Internet about Defendant's deceptive practices and spam texts.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals nationwide. Plaintiff also seeks statutory damages on behalf of herself and members of the class, and any other available legal or equitable remedies resulting from the illegal actions of Defendant.

## JURISDICTION AND VENUE

4. Jurisdiction is proper under 28 U.S.C. § 1331 as Plaintiff's alleges violations of a federal statute. Jurisdiction is also proper under 28 U.S.C. § 1332(d)(2) because Plaintiff alleges a national class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiff seeks up to $1,500.00 (one-thousand-five-hundred dollars) in damages for each call in violation of the TCPA, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

5. Venue is proper in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant is deemed to reside in any judicial district in which it is subject to the court's personal jurisdiction, and because Defendant provides and markets its services within this district thereby establishing sufficient contacts to subject it to personal jurisdiction. Further, Defendant's tortious conduct against Plaintiff occurred within the State of Florida and, on information and belief, Defendant has sent the same text

messages complained of by Plaintiff to other individuals within this judicial district, such that some of Defendant's acts in making such calls have occurred within this district, subjecting Defendant to jurisdiction in the State of Florida.

## PARTIES

6. Plaintiff is a natural person and a citizen and resident of the State of Florida

7. Defendant is a Delaware corporation whose principal place of business is located at 1 Letterman Drive, Suite C3500, San Francisco, California, 94129.  Defendant directs, markets, and provides its business activities throughout the United Stated, including the State of Florida.

## THE TCPA

8. The TCPA regulates and restricts the use of automatic telephone equipment.

9. The TCPA protects consumers from unwanted text messages that are made with autodialers.

10. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system or prerecorded message; (3) without the recipient's prior express consent.  47 U.S.C. § 227(b)(1)(A).

11. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

12. In an action under the TCPA, a plaintiff must only show that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

13. The Federal Communications Commission is empowered to issue rules and regulations implementing the TCPA. In 2012, the FCC issued an order tightening the restrictions for automated telemarketing calls, requiring "prior express **written** consent" for such calls to wireless numbers. *See In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1838 ¶ 20 (Feb. 15, 2012)(emphasis supplied).

14. On November 18, 2016, the FCC issued an Enforcement Advisory regarding text messages. In its advisory, the FCC warned mobile application providers like Defendant that their applications must comply with the TCPA and that they must obtain express consent before transmitting text messages to individuals:

> This includes text messages from text messaging apps and Internet-to-phone text messaging where the technology meets the statutory definition of an autodialer. **The fact that a consumer's wireless number is in the contact list of another person's wireless phone does not, by itself, demonstrate consent to receive robotexts**.

FCC Enforcement Advisory No. 2016-06, November 18, 2016, ROBOTEXT CONSUMER PROTECTION, TEXT MESSAGE SENDERS MUST COMPLY WITH THE TELEPHONE CONSUMER PROTECTION ACT; (emphasis supplied).

15. To obtain express written consent for telemarketing calls, a defendant must establish that it secured the plaintiff's signature in a form that gives the plaintiff a "'clear and conspicuous disclosure' of the consequences of providing the requested consent….and having received this information, agrees unambiguously to receive such calls at a telephone number the [plaintiff] designates." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C.R. 1830, 1837 ¶ 18, 1838 ¶ 20, 1844 ¶ 33, 1857 ¶ 66, 1858 ¶ 71 (F.C.C. Feb. 15, 2012).

16. The TCPA regulations promulgated by the FCC define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(12).  In determining whether a communication constitutes telemarketing, a court must evaluate the ultimate purpose of the communication.  *See Golan v. Veritas Entm't, LLC*, 788 F.3d 814, 820 (8th Cir. 2015).

17. "Neither the TCPA nor its implementing regulations 'require an explicit mention of a good, product, or service' where the implication of an improper purpose is 'clear from the context.'" *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012)).

18. "'Telemarketing' occurs when the context of a call indicates that it was initiated and transmitted to a person for the purpose of promoting property, goods, or services." *Golan*, 788 F.3d at 820 (citing 47 C.F.R. § 64.1200(a)(2)(iii); 47 C.F.R. § 64.1200(f)(12); *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd at 14098 ¶ 141, 2003 WL 21517853, at *49).

19. The FCC has explained that calls motivated in part by the intent to sell property, goods, or services are considered telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶¶ 139-142 (2003).  This is true whether call recipients are encouraged to purchase, rent, or invest in property, goods, or services during the call *or in the future*.  *Id*.

20. In other words, offers "that are part of an overall marketing campaign to sell property, goods, or services constitute" telemarketing under the TCPA.  *See In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 136 (2003).

21. If a call is not deemed telemarketing, a defendant must nevertheless demonstrate that it obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulaions Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls").

22. Moreover, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) (The FCC has determined that a text message falls within the meaning of "to make any call" in 47 U.S.C. § 227(b)(1)(A)); *Toney v. Quality Res., Inc.*, 2014 WL 6757978, at *3 (N.D. Ill. Dec. 1, 2014) (Defendant bears the burden of showing that it obtained Plaintiff's prior express consent before sending her the ***text message***). (emphasis added).

23. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

24. A violation of the statutorily-protected substantive right created by the TCPA "causes 'real' harm, as opposed to harm that is 'hypothetical' or 'uncertain.'" *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, No. 2:15-cv-793-FtM-29MRM, 2016 U.S. Dist. LEXIS 160869, *8 (M.D. Fla. Nov. 21, 2016)(citing *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 WL 3611543, at *3 & n.3 (11th Cir. July 6, 2016)(not receiving information to which one is statutorily

entitled is a "concrete" injury); *Guarisma v. Microsoft Corp.*, No. 15-24326-CIV, 2016 WL 4017196, at *4 (S.D. Fla. July 26, 2016(plaintiff whose sales receipt showed more than last five credit-card digits alleged a concrete harm under the Fair and Accurate Credit Transactions Act (FACTA) since, "in enacting the FACTA, Congress created a substantive right for consumers to have their personal credit card information truncated on printed receipts," not merely a "procedural requirement for credit card-using companies to follow")).

25. Indeed, individuals, including Plaintiff and members of the Class, who receive text messages in violation of the TCPA suffer concrete injuries analogous to common law torts such as invasion of privacy, intrusion on seclusion, trespass to chattels and conversion. *See Palm Beach Golf Center v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1250–51 (11th Cir. 2015) (owner of facsimile machine has Article III standing to sue where he loses use of that machine); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance"); *Bagg v. Ushealth Group, Inc.*, Case No. 6:15-cv-1666-Orl-37GJK, 2016 WL 1588666, at *3 (M.D. Fla. Apr. 20, 2016)("'Courts have consistently held that the TCPA protects a species of privacy interest in the sense of seclusion,' and recognize that the sending of an unsolicited fax constitutes an invasion of privacy.")(quoting *Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1249 (10th Cir. 2006)); *Jamison v. Esurance Insurance Services, Inc.*, Case No. 3:15-CV-2484-B, 2016 WL 320646, at *3 (N.D. Tex. Jan. 27, 2016)("From this, the Court concludes that an individual suffers an injury in fact from unauthorized telephone contact when it causes an incurrence of charges, a reduction in usable minutes, or occupation of the telephone line, making it unavailable for other use."); *Johnson v. Navient Solutions, Inc.*, Case No. 1:15-cv-00716-LJM-MJD, 2015 WL 8784150, at *2 (S.D. Ind. Dec. 15, 2015)("Based on the allegations in the

Complaint and the TCPA's protection of Johnson's privacy rights, the Court concludes that Johnson has stated a claim for actual harm, upon which he may rely to provide standing.")(citing *Schumacher v. Credit Protection Ass'n*, Cause No. 4:13–cv–00164–SEB–DML, 2015 WL 5786139, at *5 (S.D. In. Sept. 30, 2015)("Here, [plaintiff's] TCPA-created right to privacy was invaded by repeated automated calls from CPA."); *Weisberg v. Kensington Professional and Associates, LLC*, Case No. 15-cv-08532, 2016 WL 1948785, at *3 (C.D. Cal. May 3, 2016)("The invasion of privacy and the allegation that the illegal calls cost Plaintiff and the class money — financial harm — are not speculative future injuries or injuries based on the violation of rights provided in a statute. Thus...Plaintiff does allege actual monetary damages."); *Lathrop v. Uber Technologies, Inc.*, Case No. 14-cv-05678-JST, 2016 WL 97511, at *4 (N.D. Cal. Jan. 8, 2016)("Plaintiffs allege they and members of the class 'suffered damages in the form of text message, data, and other charges to their cellular telephone plans.' Id. ¶ 116. Based on the allegations in the Second Amended Complaint, the Court concludes that Plaintiffs have sufficiently stated an injury in fact."); *Fini v. Dish Network, L.L.C.*, 955 F.Supp.2d 1288, 1296–97 (M.D. Fla. 2013) (plaintiff has standing to sue where she lost use of cellular service for which she previously had paid).

### DEFENDANT'S MOBILE APPLICATION AND TCPA VIOLATIONS

26.     Defendant is a mobile application designer, developer, and operator. Defendant developed and operates "Ever," a photo-sharing and backup service application for Apple and Android devices (the "Ever App"). The Ever App allows users to transfer photos from their mobile devices to Defendant's cloud storage service, and share those photos with other users. The Ever App has been downloaded by millions of people throughout the United States.

27. An individual wishing to use Defendant's service must first download the Ever App on his/her mobile device.

28. Once downloaded, the Ever App directs the user through a series of sign-up screens. During this process, Defendant offers the user extended storage in exchange for allowing the Ever App to gain access to all of the telephone numbers on the user's contacts list. If the user permits the Ever App accesses to his/her contacts, the Ever App automatically pre-selects all of the user's contacts.

29. The user is then shown a screen where all of the user's contacts are pre-selected. At this time, it is not clearly or explicitly disclosed to the user that Defendant will cause an automatic text message to be sent to all of the user's contacts. In fact, it is not until <u>after</u> Defendant automatically sends a text message to the user's contacts that the user is told that text messages have been sent to all of his/her contacts.

30. If the user allows the Ever App to access his/her contacts list, the Ever App transmits the telephone numbers to Defendant's automatic telephone dialing system and causes that system to transmit a generic text message to the user's contacts.

31. Users of the Ever App do not send the text messages. Rather, they are deceived into providing Defendant with their contact lists. Once in possession of a user's contact list, Defendant stores the numbers in its text messaging database and, subsequently, Defendant's automatic telephone dialing system causes the text messages to be transmitted. The messages are transmitted automatically and without any type of human intervention before transmission.

32. On its website, Defendant admits that it is the sender of the text messages at issue in this case:

> When you invite others to join Ever by using our referral page, **<u>we send a one-time text message on your behalf to that referral</u>**. You

> may share files or folders with friends from the Service by a variety of ways, including via text or email (**sent by Ever**...[2]

33. Notably, the text messages are sent from Defendant's own telephone numbers, and not from the user's telephone number. The numbers used by Defendant to transmit its text messages are "spoofed" and are not active telephone numbers.

34. The ultimate purpose of Defendant's text messages is to invite others to download the Ever App and purchase Defendant's services. Specifically, the text messages contain a link to Defendant's website (www.ever.com), where Defendant promotes the Ever App and encourages individuals to subscribe to its services for a fee of $9.99/month.

35. At no point prior to sending its unsolicited text messages does Defendant obtain any type of consent from the recipients of the messages.

36. Further, the user of the Ever App is not given any type of control over the content of the texts or the timing of when those texts are sent. The user is never shown a sample of the text message before it is sent to his/her contacts and has no control over when the text messages are actually sent to his/her contacts.

37. Defendant, not the Ever App user, has sole control over the content of the invitational texts and sends the text messages at its own discretion. In all, Defendant sends the text messages at issue with little or no obvious control by the users of the Ever App.

38. As a result of Defendant's deceptive practices, the Ever App users play no substantive role in deciding whether to send the invitational text messages at issue, and have no control over the content or timing of the messages.

39. Considering the goals and purposes of the TCPA, and the totality of the facts and circumstances surrounding the placing of the text messages at issue, Defendant is considered the

---

[2] *See* www.ever.com/privacy-policy/; (last accessed on December 12, 2016) (emphasis supplied).

maker of the text messages because it was so involved in the placing of the text messages as to be deemed to have initiated the messages.

40. Defendant's failure to disclose that it will cause unsolicited text messages to be sent to users' contacts has resulted in numerous complaints being filed by users of the Ever App on Apple's App Store and Google's Android Play Store websites:

- They steal your phones [sic] contact info, do viral marketing, by dishonest representation. They will text your contacts saying that you added their photo on the website (when you havent) [sic] with a link that "expires tomorrow ". Google them first and if you received a text put that number in one in Google and most likely you will see reviews of people that had their contact info stolen.

- Is anyone else getting random fake invites to this app? I am and I'd like to know what's going on.

- Do not use. Intrusive spam. Sends text to your contacts asking to check your photo to get them to install.[3]

- Scam don't download. This app steals your contact information and they will start to receive unauthorized text messages.[4]

41. Similarly, recipients of Defendant's spam, aggravated by the nuisance, disruption, and invasion of privacy caused by Defendant's texts, have voiced their complaints on various on-line forums:

- j keith Reported: 2258004531. Shelia Cagle just recommended you check out your photos on Everalbum. Link expires tomorrow. http://app.everpics/UldkMkrrEEEss PS: I don't know Shelia Cagle!!!!!!!!!!!!!!

- Everalbum. txting a contact of mine recommended me to checkout my photo's on Everalbum for one I never have heard about such a app/website much less store my photo's there & two

---

[3] *See* https://play.google.com/store/apps/details?id=com.everalbum.everalbumapp&hl=en; (last accessed on December 7, 2016).

[4] *http://android-apk.net/app/ever-free-photo-storage/703177890/*; (last accessed on December 7, 2016).

11

this particular contact they recommended is not a contact that I would have any connection with whatsoever involving pics that's what threw up a red flag with me

- ever album scam. says friend recommend everalbum link http://app.ever.pics/Uldk/ySvxfyxOBw and expires tomorrow

- Fake Everalbum. Uses a name stolen from your contacts earlier to lure you into clicking a link. Reads like this: "[person in your contacts] just recommended you check out your photos on Everalbum. Link expires tomorrow: [malicious link]"

- App.ever.pics . They mentioned a personal friend of mine(they even gave the correct name) recommended for me to check out my personal photos on app.ever.pics and that the link expires tomorrow. I did not open it and called my friend he said he knew nobody from that number

- Everalbum photos. scam says, "Your friend Wendy U just recommended you check out your photos on Everalbum. Link expires tomorrow: http://app.ever.pics/UldkuXC1AA3QDw

- EverAlbum link. Your friend xxxxx xxxxx xxxx just recommended you check out your photos on Everalbum. Link expires tomorrow: http://app.ever.pics/Uldk/PdpFX2PLCw

- Gabriella C******* just recommended you check out your photos on Ever. Link expires tomorrow:Then there was a second link to tap download the link. I've put asterisks in to not disclose the person's last name as I know it was not intentionally sent by this person - she's a friend's 10 year old daughter. [5]

42. The sizeable number of complaints found on the Internet by recipients of Defendant's unsolicited text messages establishes that at least several thousand consumers have received Defendant's text messages.

---

[5]   See   http://www.scamcallfighters.com/scam-call-13236724818-RECOMMENDED-YOU-CHECK-YOUR-PHOTOS-ON-EVERALBUM--LINK-EXPIRES-TOMORROW-Text-Message--SMS--Scam-49718.html;(last accessed on December 7, 2016).

43. As demonstrated by the above complaints, Defendant typically uses the following generic format for its text messages: "Your friend [name] just recommended you check out your photos on Everalbum. Link expires tomorrow: [link]."

44. The impersonal and generic nature of Defendant's text messages, combined with the large number of messages sent by Defendant, demonstrates that Defendant utilizes an ATDS in transmitting the messages.

45. Specifically, upon information and belief, Defendant utilizes a combination of hardware and software systems to send the text messages at issue in this case. The systems utilized by Defendant have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly at the time the call is made, and to dial such numbers, *en masse*, in an automated fashion without human intervention.

### FACTS SPECIFIC TO PLAINTIFF

46. At all times relevant, Plaintiff was a citizen of the State of Florida. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

47. On October 16, 2016, Defendant caused the following automated text message to be sent to Plaintiff's cellular telephone number ending in 5368 (the "5368 Number"):



48. The text message received by Plaintiff originated from telephone number 267-613-9146, which is owned and/or controlled by Defendant. Further, this is a "spoofed" number in that it is not active and states that it is disconnected if a call is attempted to the number.

49. The text message received by Plaintiff is identical to the generic messages received by thousands of other individuals as outlined above. This fact establishes that Defendant used an ATDS in transmitting the above text message to Plaintiff.

50. The link (http://app.ever.pics/Uldk/He9qv6ygwx) provided in the text message received by Plaintiff is a link to Defendant's website (www.ever.com), where Plaintiff was encouraged to download the Ever App. Therefore, Defendant's text message constitutes telemarketing because it encouraged the future purchase or investment in property, goods, or services – i.e. Defendant's mobile application.

51. Plaintiff received the subject text within this judicial district and, therefore, Defendant's violation of the TCPA occurred within this district. Upon information and belief, Defendant caused other text messages to be sent to individuals residing within this judicial district.

52. Plaintiff has never used Defendant's application or services, has never downloaded the Ever App on her mobile device, and has never had any type of relationship with Defendant.

53. Plaintiff has never provided Defendant her telephone number, or provided any type of consent to receive automated text messages from Defendant.

54. Plaintiff is the subscriber and sole user of the 5368 Number, and is financially responsible for phone service to the 5368 Number.

55. Defendant's unsolicited text message caused Plaintiff actual harm, including invasion of her privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

56. Defendant's text message also inconvenienced Plaintiff and caused a disruption to her life as a result of Defendant's deceptive statement suggesting that photographs of Plaintiff were being displayed on Defendant's platform without her permission ("…just recommended you **check out your** photos on Ever.").

## CLASS ACTION ALLEGATIONS

57. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of herself and all others similarly situated.

58. Plaintiff represents, and is a member of the following classes:

> **All persons residing within the United States who received telephone calls and/or text messages from Defendant to their cellular telephone within the four years prior to the filing of the Complaint in this action, for the purpose of selling or attempting to sell Defendant's goods and/or services using an automatic telephone dialing system, and who did not provide prior express consent for such call(s).**

### Numerosity

59. Upon information and belief, based on the widespread Internet complaints about Defendant's telemarketing text messages, the members of the class are believed to number in the thousands or millions such that joinder of all members is impracticable.

60. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### Common Questions of Law and Fact

61. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are:

   a. Whether Defendant sent non-emergency text messages to Plaintiff's and Class members' cellular telephones using an autodialer and/or prerecorded message;

   b. Whether Defendant can meet its burden of showing that it obtained prior express consent to make such calls;

   c. Whether Defendant's conduct was knowing and willful;

   d. Whether Defendant is liable for damages, and the amount of such damages; and

   e. Whether Defendant should be enjoined from such conduct in the future.

62. The common questions in this case are capable of having common answers. Defendant routinely places automated calls to telephone numbers assigned to cellular telephone thus, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### Typicality

63. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### Protecting the Interests of the Class Members

64. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained counsel who is experienced in prosecuting class actions. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**Proceeding Via Class Action is Superior and Advisable**

65. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes are economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

66. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.  Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF THE TCPA, 47 U.S.C. § 227(b)**

67. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

68. Defendant violated the TCPA by sending unsolicited text messages to Plaintiff and the Class members on their cellular phones without first obtaining their prior express consent and using equipment which constitutes an automatic telephone dialing system for the express purpose of marketing Defendant's goods and/or services.

69. Defendant's text messages caused Plaintiff and the Class members actual harm including, but not limited to, invasion of their personal privacy, aggravation, nuisance and

17

disruption in their daily lives, reduction in cellular telephone battery life, messaging charges, and loss of use of their cellular telephones.

70. As a result of the aforementioned violations of the TCPA, Plaintiff and the Class are entitled to an award of $500.00 in statutory damages for each call in negligent violation of the TCPA, or up to $1,500 in statutory damages for each call in willful violation of the TCPA, pursuant to 47 U.S.C. § 227(b)(3)(B).

71. Additionally, Plaintiff and the Class are entitled to and seek injunctive relief prohibiting such future conduct

**WHEREFORE**, Plaintiff and members of the Class demand a jury trial on all claims so triable, and judgment against Defendant for the following:

a. Injunctive relief prohibiting violations of the TCPA by Defendant in the future;

b. Statutory damages of $500.00 for each and every text message made in negligent violation of the TCPA or $1,500 for each and every call made in willful violation of the TCPA; and

c. Such other relief as this Court deems just and proper.

Dated: December 15, 2016

        Respectfully submitted,

        **HIRALDO P.A.**
        401 E. Las Olas Boulevard
        Suite 1400
        Ft. Lauderdale, Florida 33301

        */s/ Manuel S. Hiraldo*
        Manuel S. Hiraldo
        Florida Bar No. 030380
        Email: mhiraldo@hiraldolaw.com
        Telephone: 954.400.4713
        *Counsel for Plaintiff and the Class*